Second case in the morning, call 2-09-294 Henry Mark P, alleged to be a person subject to involuntary treatment. On behalf of the F1, Ms. Tricia Werner. On behalf of the athlete, Ms. Tara H. Doreen. Ms. Werner? Thank you. Good morning. Good morning. May I please the court, counsel? I'm Patricia Werner with the Guardianship and Advocacy Commission on behalf of the respondent at the line, Mr. Mark P. Involuntary civil commitment results in a massive curtailment of respondent's liberty. Consequently, the procedures used in a commitment hearing must comply with the essentials of fair treatment. At issue here is whether a respondent in a civil commitment hearing is entitled to a question, to a hearing on whether restraints are used during that hearing. In criminal prosecutions, restraining or shackling a defendant offends the due process and confrontation clauses unless they are used only as a last resort. Over the past 40 years, this principle has been reflected in defendants' rights with the need for orderly justice. The Boves case, decided in 1977, announced the need for the courts to consider specific factors before concluding that a defendant needs to be restrained. Counsel, the people's argument with reference to that in one respect is that while you objected to the restraints, or I think you were a trial counsel, weren't you? I was. While you objected to the restraints, you did not request a hearing. Must it be requested or should it be implicit or considered implicit in your request to have the shackles removed? Well, I think it goes to my argument also that, frankly, I was ineffective. That was part of my argument in my May brief, that because I did not serve my client. And I think it undermined the perception of fairness in the trial. To answer your first question, though, the direct question, is it implicit? I think that it is. When I object to my client being restrained, the court seems like it has one of two things it can do. It can ignore my objection and have him restrained. And then the basis of the appeal is that my client's continued presence in the courtroom in restraint violated due process. I think that's inherent in this argument, is the hearing, by asking this court to require the hearing, I'm suggesting to the court that there is a mechanism for this court to evaluate what happened. A plainer, maybe more straightforward argument would be to say the trial court had no authority to order that my client continue in restraints. I suppose as a more of a tactical view, I wouldn't want to stand before this court and say that no judge could ever order a civil litigant restrained. I don't think that's reasonable or realistic. So instead, in my research revealed the Bose case and several  other cases, the court found that those who are at risk, particularly those whose liberty is hanging in the balance, should not be restrained. So by analogy, given the criminal defendant's liberty that is at stake and the requirement of the Bose hearing, then by analogy, the respondent's liberty is at stake in a commitment hearing and therefore a Bose inquiry or something similar. Counsel, may I ask you a question? Sure. Sorry. I used to prosecute commitments, involuntary commitments. And on a few occasions, I actually went to the institution where the individual was institutionalized and there was a court reporter, myself, the attorneys, the respondent. There probably was, although I can't say for sure, was a clerk. I think there was because he carried the file or she carried the file. But I can't remember if there was a bailiff or not. But the question I'm going to ask you is Rule 430 talks about incarcerated defendants and talks about juries in courtrooms. Was your hearing in an institution or was it in a courtroom? It was absolutely in a courtroom. It was in the Lake County Courthouse. I believe it was in courtroom 220. But, yes, it was in the courtroom. The deputies, bailiffs were present in the courtroom. What is your response to the fact that I believe the trial judge said that the fact that the respondent is in shackles or restrained has no effect on his consideration of the case? Well, that's certainly not the only issue, and that's something that trial judges in other cases where reversal. That may not be the only issue, but I don't know that the record reflects that there was any prejudice arising from the inability of your client to assist you. I know that there are factors. The question is that let's assume that those factors exist. The record seems to be devoid of any factual support for the concept that this person was looking for papers or writing something and couldn't do so because he was so impinged with his restraints that he couldn't participate in this defense or aid you. Part of the problem I have with this case is the record seems to be very thin or scant when it comes to establishing not so much that there may or may not have been a procedural default relative to whether or not there should or should not have been a booze hearing, but whether or not there was any prejudice that arose from the fact that there wasn't a booze hearing. Certainly. Well, first I would point to the respondent's own comments himself when he expressed frustration at being unable to open his folder. He did enter the courtroom with a folder, and he did say directly to the court, I can't even open my folder. I mean, these are very short hearings generally, as I'm sure you saw the transcript was only 40-something pages, I believe. For him to have made that plea to the court and to express that anguish about not being able to really fully participate in the matter, I think does go to prejudice. But before we even get to prejudice, this court has held that when the procedural protections that should be afforded, respondents in mental health hearings are ignored, when their due process rights are ignored, reversal is warranted. And I would direct your attention to the Lawrence S. case. In that case, the respondent was not permitted to cross-examine a witness. And this court said it doesn't matter if he may not have been able to do it well. It doesn't matter if he had refused to do it. The fact that the trial court denied him his right warrants reversal. Similarly here, the respondent was shackled. We have to ask, under what authority was he shackled? And when an objection was made, why was there no response other than to dismiss it out of hand as, well, it won't affect me? What affected him? Well, there was more than that. There was something about maybe the state, and I don't know if Ms. Warrior was trial counsel. She was not. They said, well, the officers would prefer to have him in restraints. And they said something like, yes, we would. They did. Now, under any stretch of the imagination, could that be considered a hearing? No, Your Honor, I don't think so. Several cases that I cited in my brief, the trial court deferred to the will of the deputies. And the reviewing courts have said, no, trial courts should not abdicate its responsibility to have an inquiry. We're not asking for much. Just a hearing. And here, instead of a hearing, I do these hearings all the time, and I ask every time, can the respondent please be removed? And it's always granted. Then, this time, it is not based on the state's representation that the deputies would prefer that he remain cuffed, shackled? Well, but they're responsible for the safety of those in the courtroom, are they not? I mean, they bring a defendant who's incarcerated or who is in their custody to the courtroom. It's their responsibility to make sure that that person remains in the courtroom and there is no untoward incident. So they're not responding, are they, at whim, but certainly based on their knowledge of what their responsibilities are. But by that logic, Your Honor, any mental health recipient should expect to be shackled during his or her trial. Is that really the message? If you are alleged to be subject to involuntary admission, if you are a mental health patient in a psychiatric unit brought to trial in a courtroom, you, by golly, should expect to be shackled? That's the issue before us, is it not? I mean, the procedures are all established in criminal cases. This is not a criminal case. This is a civil case. I mean, I think this is what we're trying to decide here. So I think we're looking for, obviously, the reasons and any precedent that could be used to assist us in this. Is this respondent presently institutionalized? No, he is not. Is there any reasonable probability that he will be subject to another petition? I think so. It's difficult to say. He has had previous hospitalizations prior to this. Will you represent him in the future, by any chance? Will I personally? Or your office? Our office may well. Is your office going to take the position in the future that you're going to request a booze hearing on the record, regardless of what the trial court does? I would imagine that that would be our office's position. But let me make clear. Well, you said that what you did was in effectiveness of counsel. I would tend to think if you truly believed that, you would probably admonish your colleagues and put a post-it note on your bathroom mirror saying, Today I'm going to request or demand a booze hearing in every situation where someone is restrained. It was my client. Absolutely, Your Honor. And the Guardianship and Advocacy Commission's Legal Advocacy Service has 10 attorneys in the state. There are 102 counties. I don't know exactly how many counties hold mental health hearings. Not every county has a psychiatric facility within it. So sometimes patients are transported to another county for their hearings. So that tells us that of the 102 counties, and six of our attorneys are in Cook and Lake and Will, that we are not putting post-it notes on the bathroom mirrors of the public defenders of the various counties in Illinois. I mean, I suppose, yes, maybe there is some other remedy. Maybe I should, you know, sing from the rooftops. Hey, hey, counsel in these matters, make sure you ask for a booze hearing if this happens. But doesn't it make more sense for this court, as a guardian of human rights, of civil rights, of litigants, to say, yes, civil respondents in mental health hearings, in this context, are more like criminal defendants than not? What makes it more like criminal defendants? Just the restraint of liberty? The restraint of liberty, of course, is at the core. Let's look at Rule 40, but if we go beyond the restraint of liberty. Well, there are other indicia of criminal trials that apply in civil commitment matters. For example, the Strickland Standard of Ineffective Assistance of Counsel is what is relied on in evaluating counsel's ineffectiveness. Okay. The right to be present. The, sorry, I'm blanking. The right to be present unless it is waived. The right to cross-examine to confront witnesses. These are adversarial hearings. The right to counsel? The right to counsel exists. It's statutory, not constitutional. But the right to some kind of assistance in the courtroom seems to be required by the Constitution. I didn't cite it, but I think the well-known case, Addington v. Texas, that talks about procedural requirements for civil commitment cases would suggest that some kind of assistance is required. And so they share with criminal trials at the core, as I've mentioned, that loss of liberty, but also these other indicia. And this court, in Alex T. And I raised this in my brief, and it's maybe a little bit too cerebral, but this court talked about jurisdiction. You know, that we now, you know, courts are of general jurisdiction, and the court looks very askew at cases that argue limited jurisdiction. But in Alex T., this court said, because there are the similar things at stake in criminal cases and in civil commitment cases, we're going to look at this differently, and the statutory limit on our authority, we're going to follow that, unlike the more recent cases where we talk about the broader grants of authority. You know, Supreme Court Rule 430 appears to be, on its face, limited to trials, either a bench trial or a jury trial. Not to other proceedings, not to bail proceedings, not to a motion to suppress. How is a commitment hearing similar to a bench trial, let's say? Well, it is a bench trial. I mean, a trial as opposed to a motion. It is a trial where the state has the burden of proof. The state presents witnesses. They are sworn. In this case, there is a doctor who is an expert who testifies as to the elements, and these are required to occur in a civil commitment case. The state bears the burden of proof, just as it does in a criminal trial. The rule says, once the trial judge becomes aware of restraints, prior to allowing the defendant to appear before the jury, would imply to me that the judge is allowed to see the defendant, the respondent, in restraints. In other words, there's nothing that would suggest in this rule that before a booze hearing is held, that the respondent is supposed to be unrestrained. They're supposed to be hearing while he's unrestrained, and the factors that are set forth in the rule are to be considered either with testimony or other evidence and rulings made thereon, after which the trial court then decides whether or not the restraints should be reimposed. If you read these factors, some of these factors just don't seem to fit with a civil proceeding relating to mental commitment. Risk of nonviolence. Past criminal record. I guess there could be past escapes, but I've frankly never, in my experience, seen it. Size and mood of the audience. The only people that have ever been at any hearings that I've either been a prosecutor or a judge at, it was a few family members or a guardian or something like that. The way this rule is written, it sounds like it relates to criminal proceedings. It doesn't sound like it relates to civil proceedings. I know the dictate, or I should say commentary in Allen, made it sound like it applied in any proceeding where there was supposedly a liberty interest involved. But how do you reconcile this rule and say that if you consider the factors and you consider the fact that the judge supposedly is allowed to see someone in restraint, how it will affect the client other than possible prejudice because he can't open his file or write notes? Well, a couple of things. First, I think you have to look at the overarching purpose of the rule is to require that there be some inquiry. And that is what I've stressed in my brief again and again. Something similar, something like a booze hearing. Of course, the rule is not directly applicable to civil litigants. It's clear that it is not. But if you look carefully at the rule, I think it supports our argument that some kind of hearing is required before we find and shackle civil respondents in mental health hearings. So what are the limits and parameters of that hearing? And then maybe we ought to let counsel, you'll have some additional time in the bottle. Thank you, Judge. But if you want to just respond to that. I mean, how long does the hearing have to be? Justice Hutchinson asked the question, you know, could what occurred here be considered a hearing? There isn't, what would the judge have to do? If it's not as detailed as Rule 430, let's say, would have us believe that that's for criminal trials, why couldn't it be just a very informal inquiry as happened in this case? I would scarcely call what happened in this case any sort of inquiry. This was a complete deferral of the trial court's authority to the very bare opinion or preference expressed by the judge. There was nothing to suggest that my client was violent. There was nothing before the judge to suggest that my client might try to hurt someone. There was nothing to suggest that he might try to leave. There was nothing to suggest that the courtroom was somehow not secure. There was nothing to suggest that he needed to be restrained. Nothing. And so when I asked the court, please, unshackle my client to simply have this exchange that, oh, we're really, we prefer that he be restrained. I'm sorry. I'm somewhat incredulous that we can just accept that. At what point, then, would we say civil litigants can be restrained? A petitioner in a dissolution proceeding who has an order of protection against him, perhaps if he comes to court, he should be shackled. Thank you, counsel. We'll have additional time. Thank you. May it please the court, counsel. My name is Tara Ory, and I'm the assistant state's attorney in Lane County, representing the people of the state of Illinois in this matter. And I urge this court to affirm the trial court's order of involuntary commitment. I also urge this court to find that booze hearings are not required in the civil commitment context. And if I may address a few things that counsel brought up during her argument. These are not, these are civil trials. These are not criminal trials. Just because they are similar in DESHOP to criminal trials does not mean that we transfer everything from the criminal context to the context of a civil commitment hearing. Well, counsel, let me just comment on that. If they are civil and not criminal, why would there be restraints in any of it? If I have one wish about this case, Judge, it is that the reasons for the respondents, the reason that he was handcuffed, it should have been fleshed out more during the hearing. We do admit that. So what I can say to that argument is that they are not criminal trials. They are civil trials. They are civil trials. They fall somewhere in between, if I may. There are certainly contexts that do cross over from the civil trial. But we certainly operate under the code of civil procedure. But there are, they fall somewhere in between because these are not civil litigants in the traditional sense. So there could be reasons to have these respondents handcuffed, but... Well, might it be, I'm not advocating for your position, but I can simply say most of these people who appear for these proceedings are not there voluntarily. That's correct. It's an involuntary commitment. Is that enough alone to presume that they should somehow be restrained? Absolutely not. And that is not the state's position today. The state is not saying that it's okay to have civil committant respondents handcuffed because they have been alleged to have a mental illness. That is certainly not the position that the state is advocating today. The difference here is that, admittedly, this should have been fleshed out better on the record. There were, and the testimony later on in the hearing, it's implicit why the respondent was handcuffed. But this is not a situation where it's standard operating procedure, such as the Will County cases where they had, they just restrained all people who were charged with a felony. That is not something that the state is advocating. And that's not something that we do in Lake County. This was certainly a unique situation. Did this person who was there for the hearing, was this person incarcerated, come from the institution to the jail and then brought from the jail to the courtroom? Is that, or? This person was not incarcerated. This person was at the hospital and then picked up from the hospital and brought to court. So he was not, this was not a person who was charged with a crime. He was not picked up from the hospital by the sheriff's deputies, as is standard operating procedure in Lake County. And brought directly to the courtroom. Brought to the holding cell. And that's also a policy decision they have. They're brought through the bullpen and then to the courtrooms. Assuming, arguendo, that booze is a rule of criminal procedure and does not have application here because this is a civil proceeding. Does this court have the authority or the power to require a beer hearing? Which is a little bit less intoxicating than a booze hearing. And would at least require some inquiry as to why a civil proceeding respondent is under restraint. In other words, a record should be made by the trial court as to its reasons. So that there is some meaningful review. That's certainly within this court's power today. What the state's advocating, and if I can be up front, I was not the counsel that wrote the brief. So I, what I'm about to say might kind of turn it on its head. But the state's position, the state is not trying to be unreasonable at all. The state's position that these hearings are not required, especially when, as in this case, the only prior fact was the judge. So the judge was the one who the evidence was brought in front of. Implicit in all bench hearings, be they civil or criminal or civil commitment, which I'm going to argue falls somewhere in between, is that we trust our judiciary to be able to make decisions based on facts before them and applying those facts to the law. Implicit in all bench hearings is that the judges, unlike lay jurors, and there's many mention of that in all the cases cited by respondent and by the state, judges, unlike lay jurors, are able to make decisions and are insulated from things which may be prejudicial to a jury. So what I'm arguing today, what the state's position is today, that these hearings, there's no reason to apply a one-size-fits-all rule that these hearings will be required in civil commitment context, especially if we look at the facts, the respondent here, the judge was the sole trier of fact. And I appreciate the distinction that you were not the author of the brief, and I do not recall it. I knew there was a name that was unusual, and it was Mr. Anger. Correct. Anger, or however he says it. His position was that she had to request it because it had been waived by not saying, I want a hearing on this, which we've already discussed. And I think you're now saying that that's not necessarily the position you're taking. But would it be the judge's responsibility to, under, it looks like under the new statute, the new rule, it is the judge's responsibility because it says once he recognizes, he or she recognizes that there are restraints, he or she must do something. Would you advocate this here as well, to ask why? Or would it still be counsel's responsibility to make a request for some sort of hearing? I think that the rule does make it clear that it is up to the judge to make that determination. And I think that the rule, you know, I'm advocating this position that there was no prejudice because this hearing was only before a judge, as a prior fact. And I think I draw attention to this rule not for the position that it only should be applicable in criminal trials. I draw attention to this rule because it's not required when a defendant is brought before a judge under a context where he's not allowed a jury, such as a bond hearing, or he's brought before the court. It's not, it doesn't fit exactly. But what I'm arguing is that the cases, this new Supreme Court rule, and the cases certainly seem to emphasize the importance of the defendant being handcuffed in the presence of a jury. Certainly the United States Supreme Court in DEC said that it offends due process and it's against due process to have physical restraints visible to the jury. So that's where I make emphasis today. Doing what the respondent suggests, and that be just extending the blanket rule that this additional inquiry, be it formal, be it informal, should apply in the civil commitment context no matter what, to me expands that procedure than what is even allowed under the criminal code. And it's the state's position that we don't need to go that far under the Mental Health and Disabilities Act. Would this court decide that booth hearings should apply under the civil commitment context? Mark P suffered no prejudice from the court's failure to hold this hearing. Upon objection from counsel that the respondent was handcuffed, the court stated on the record that the fact that he was handcuffed would in no way influence this decision whether or not that he was subject to involuntary commitment. And I appreciate counsel's argument that the inquiry is not, but it's the state's position that it is. He was the only trier of fact during this hearing. And he stated on the record that the fact that Mark P was handcuffed would in no way influence his decision. What about Mr. P's request later? Well, first of all, I think he wanted to represent himself and then decided he wouldn't represent himself. But what about the concept that he couldn't open his folder? He may have had some notes that he could not access. While the judge has said what he said early on, now there appears to be a problem in that Mr. P can't do something he wanted to do. And that comment, that comment made by Mr. P, was at the end of the hearing after the judge had rendered his decision. This is, this was, and besides that mention after he had rendered his decision, there's nothing else in the record that indicates he was unable to assist counsel, that he was unable to open his folder, he was unable to communicate with counsel. So I appreciate the fact that Mr. P may have been upset or uncomfortable by being handcuffed during this hearing. I know we want to minimize any discomfort that he may have felt. But that was a cursory comment after the judge had rendered his decision, when he, of course, was upset by the finding of an involuntary commitment. So besides that, there's nothing else in the record to indicate that he was unable to confer with counsel and that he was unable to assist counsel with trial. The judge based his decision to find that Mr. P was subject to involuntary commitment based on the clear and convincing evidence before him. The judge, the state's witness testified that the respondent suffered from paranoid schizophrenia, that he had been abusive and aggressive on the units, that he had, that inpatient hospitalization was the least restrictive setting, especially given the respondent's aggressive nature. And again, there was testimony from the state's witness that Mr. P had made specific threats against judges. There was testimony that he threatened to blow up the courthouse and admittedly, and I do admit that this came well after the decision to keep him restrained. But from the record, we can see that there was clear convincing evidence that Mr. P was subject to involuntary admission. This is analogous to the criminal cases where we can see that these hearings are required, such as the People v. Allenson or People v. Robinson, where the court acknowledged that these hearings were supposed to take place, but the appellate court determined that failure to hold such a hearing was harmless error. And I think that if this court is inclined to hold that booth hearings are required in civil commitment cases, in this case, Mr. P suffered no prejudice and that failure to hold such a hearing was a harmless error. One of the last positions in the brief is that whether or not there should be such a hearing should be a matter for the legislature or as in the case of the new rule of the Supreme Court to make a rule. Well, how do you think the legislature gets notice of these things? Up front, I don't agree with that argument. That was my colleague who no longer works in our office that made that argument. I think this is something that, and specifically until this Rule 430 was adopted a couple of weeks ago, these cases, I think it was the state's position that these cases were required or are required in the criminal context. So I don't think that it's something that only the legislature could handle. And so I've talked about the presence of a jury. I've talked about the ability to assist counsel at trial. And there's also a notion of offending the dignity of the judicial process. And to that, and I know there's mention in the briefs about there being a closed courtroom, a crowded courtroom, but it's hard to define what offending the dignity of the judicial process. What I can say to that is, and if I may borrow some language from the Supreme Court, in People v. Allen where they said, a fair trial is far from a perfect trial. Mr. P's trial may not have been perfect. Like I said, it should have been fleshed out in greater detail as to why he was handcuffed. But it's clear that Mr. P was given a fair trial. So in summary, the state recognizes that these are very serious matters. We in no way want to minimize the uncomfortableness that Mark P. May felt. We in no way want to minimize that these hearings and what is involved in the mental health hearings, it is a massive curtailment of a person's liberty. But it's the state's position that booth hearings are not required to take place in civil commitment hearings, especially those that take place outside the presence of a jury where the judge is the only trier of fact. And again, if this court is inclined to hold that these matters are applicable, that this hearing is applicable to these matters, the people urge this court to still affirm the trial court's ruling that Mr. P was subject to involuntary commitment because he suffered no prejudicial effect from being handcuffed. Counsel, I guess I'm a little bit confused. On the one hand, you've just indicated that you think this issue should have been fleshed out at the time of this trial, and yet you're saying that there should be no requirement of a hearing in civil commitments. So what do you mean? I guess what I – I don't think that there – when I say that it probably should have been fleshed out, maybe I mean that only to make my job easier here today. But I do think that there's no reason to put a blanket requirement that these hearings are required. So you're agreeing there shouldn't have been anything more done in this case? Correct. Let me put some words in your mouth if I may. Please. There are different factors involved here, those which can be waived, which are constitutional rights, but there are certain things that aren't waivable by the parties, and that is the integrity of the system. And you mentioned about five minutes ago that there is involved in these proceedings the integrity of the judicial system relative to what transpires in the courtroom, which means that it's not something that is waivable. And if whether or not someone is restrained is not waivable, then there should at least be something on the record indicating why the trial court deemed it necessary. It doesn't mean there has to be a hearing. If there had to be a hearing, I would suggest that there would have to be some sort of request for a hearing to the extent that any constitutional rights that relate to assistance of counsel or assisting counsel or whatever would have to be raised by the individual. But when it comes to the integrity of the system, that's something that isn't the bailiwick or the prerogative or the responsibility or the duty of the arbiter to make that determination. So would it be safe to say that there had to be something that the judge did to make a record to indicate why it was that this individual was being restrained? Correct. I agree. And I don't think that, and I agree with the point that I don't think there needs to be a hearing where there is also a response from the respondent as to why he or she should not be handcuffed. So I say that meaning, you know, maybe my job here today would have been easier because there were specific reasons as to why Mr. P was handcuffed, but those were not detailed on the record. But I do not think that there needs to be a full-blown hearing. Okay. Thank you. Ms. Warner. First, I would like to remind the Court that these are trials. Evidence is admitted, testimony is taken, there's cross-examination. These are trials. Secondly, they are quasi-criminal. I mean, I know we try to separate them and the rules of civil procedure apply, but given the liberty interest at stake, courts have acknowledged that they are quasi-criminal. Counsel referred to the doctor's testimony that, in hindsight, might have justified Mr. P's being restrained during the trial. But she correctly pointed out that that didn't come out to the court until the trial was well underway. She acknowledged that it should have been fleshed out, the reasons for the restraints, and maybe had it been fleshed out, this Court's job would have been made easier because this Court could then have a basis to determine whether the trial court abused its discretion in shackling my client without a hearing. I think the real difference that I see between the two arguments now as made here as opposed to just necessarily in the brief is that while some evidence could have been put on the record, it did not have to go to the extent of a booth hearing, which might indeed allow a written response, the procedural issues that hearings often require. And so I guess the question is, is it your position that it should be pursuant to this rule, which sort of codifies the Booth's principle? Is that what you think should occur if a judge, even before just a judge, recognizes that someone is in restraints in his or her courtroom? No. I think that that's probably unduly cumbersome and, as Justice McLaren pointed out, kind of inapplicable in many cases. And what Mr. P argues in the brief is that there should be some inquiry. And to follow up on some of Justice Zinoff's questions, did this exchange that took place before the hearing constitute some inquiry? No. I don't see how anyone could argue that a yes, we prefer it, fine, it's okay with me, is some inquiry. Had the court said to counsel even, counsel, step up, why should I leave him in restraints or not, at least we would have had the opportunity. The state could have said, Judge, we've heard, and by the way, the doctor's testimony about the threat was pure hearsay offered as a basis of his opinion but not offered as substantive evidence. So those threats that were hearsay, maybe had the judge heard that, that would have justified his ruling. But had the judge heard those threats, which you now say were hearsay, I would suspect that you would say, Judge, I object, those are hearsay. So now what does the judge have before him or her? Well, I'm not sure that in the context of the basis for restraints that hearsay evidence wouldn't be allowed to be considered. I mean, I think when we're looking at procedural matters, I would imagine that the hearsay rule would be relaxed in that circumstance. And I might say, Judge, we don't have any real evidence of that. You know, when I visited him, they put me in a room alone with him, or, you know, I might make some arguments about that. But at least this court would have a record. This court said in Robinson that because shackling a defendant is presumptively improper, the court must not do that unless it puts its reasons on the record. And that's really what Mr. P is asking this court to require, that, of course, a court has to protect the people in its courtroom. The trial judge has that responsibility. But the trial judge has a responsibility to the civil mental health litigant as well, to not demean him, to not send a message to him that he is somehow perceived as a violent, crazy person and therefore requiring restraints, unlike any other civil litigant. The court has a responsibility. If I may interrupt and clarify something, what you were saying in the last paragraph or so about all you want is the reasons, I don't believe the record reflects that that request or that demand or that objection was ever made below. Am I correct or incorrect? You are correct. I know you said something about ineffectiveness. I did. And I failed to make a request. I think that due process might put the onus of that inquiry on the court. That's what I'm asking this court to find is that there has to be an inquiry, whether counsel, in my case, ineffective, inarticulately objecting to the restraints and then proceeding with the hearing, then the court, controlling his or her courtroom, should inquire. I don't know if that is a I'm done type of question. Unless we have other questions. Right. I don't. I don't either. Okay. Thank you very much, counsel. Thank you. At this time, the court will take the matter under advisement and render a decision in due course.